HENRY F. TURNER, Judge pro tem.
On January 26, 1962, Frederick F. Wilson, a building contractor, filed suit in the Twenty-Fourth Judicial District Court for tha Parish of Jefferson, against the Clerk of Court of said parish, and a New Orleans corporation, Ply-Woods, Inc., to mandamus *776 a cancellation of a certain materialman’s lien, filed on February 1, 1961, in Mortgage Book 372, folio 63, from the records of said parish, said suit bearing docket No. 67-165. The ownership of the property liened was in the name of one F. J. Barousse. The plaintiff in that case alleged improper filing of said lien; that said lien was filed too late; and further that he had paid Ply-Woods, Inc., for all the supplies furnished on the Barousse property.
On January 29, 1962, Ply-Woods, Inc., filed suit in the same court, No. 67-171, against Wilson and Barousse, praying for a solidary judgment in the amount of $862.-51, claimed to be due for materials furnished to Wilson and placed on the property of Barousse. It also asked for recognition of its materialman’s lien and privilege. The defendants answered this petition and reconvened setting forth substantially the facts contained in the suit filed by Wilson against the Clerk of Court and the Ply-Woods company. The plaintiff in the second suit filed a general denial to the defendants’ reconventional demand which had the effect of disposing of the exceptions filed in the first suit of non-joinder, lis pendens, and vagueness. The cases, however, were consolidated for the purposes of trial, and after hearing was had, the counsel for the defendants in the second suit, Wilson and Ba-rousse, filed an exception of no cause or right of action which was sustained by the judge of the district court dismissing plaintiff’s suit in the second case and ordering the cancellation and erasure from the records of the lien. From that judgment the plaintiff in the second case, Ply-Woods, Inc., who is a defendant along with the Clerk of Court in the first case, took an appeal, both suspensive and devolutive, to this court.
The facts in the case show that Wilson is engaged in the building and repairing of houses mainly for residential purposes. Over a period of several years he bought a large amount of material from Ply-Woods, Inc. The record shows that he had contracted to build a house or do repair work for Barousse, which contract was not recorded nor bonded. Evidence shows that the last materials were delivered to the Ba-rousse job at 702 Aurora Street, which delivery was made on the 3rd day of December, 1960. The lien involved was recorded on the Aurora property February 1, 1961, within the 60-day period for recording this type of lien.
Wilson had run up a considerable bill with Ply-Woods, Inc., and from the appearance of his financial condition, Ply-Woods, Inc., became concerned and filed liens on all of the property lienable upon which they had furnished materials. They had been unable to obtain payment from Wilson or to even talk to him until they filed these liens. Thereupon Wilson came to see them and entered into an agreement whereby Ply-Woods, Inc., in an effort to keep Wilson in business and avoid losing their account, which amounted to $4,950, agreed to accept Wilson’s note for the aggregate amount of all of the outstanding invoices on the various jobs upon which they had supplied materials. As a bookkeeping device, they necessarily had to account for the amount represented by this account note in their portfolio and to do so they simply showed the various accounts “zero” with the notation “see note account.” Otherwise, their books would have reflected assets of double the amount of the accounts. The note executed by Wilson was dated February 20, 1961, payable in 60 days, with interest at the rate of 7 percent after maturity. It was agreed and understood that Wilson would renew this note every 60 days for a period of a year and that in order to help him make payments on said note, that he would continue in business and continue to buy material from Ply-Woods and that Ply-Woods would add 15 percent to each invoice bill to Wilson and keep the accrued amount from the 15 percent in a separate account to apply upon Wilson’s note. This procedure was suggested by Wilson, he stating that on a previous occasion he had gotten into a similar difficulty and that another supplier had been paid in full through an arrangement such as this.
*777 On the same day the note was signed, Mr. Henry Aguiar, the President of Ply-Woods, wrote Wilson a letter in which he stated that the note would be retained in his possession and not sold or discounted. It was understood between the parties that the note was to run for 60-day periods and at the end of each 60-day period renewed for a total period of one year. Mr. Sper-ling, Office Manager for Ply-Woods, testified to that effect and added that they were to hold the note for one year and at that time it was to be picked up and paid out in full. He also added that “in the meantime we were not supposed to enforce our liens until the expiration of the one year time.” We think that the trial court’s interpretation of this statement led him to an erroneous conclusion in the case. In his reasons for judgment he states that since the note was given on February 20, some 20 days beyond the lien date, and that there was an agreement not to file suit within a year, that the year carried the note beyond the expiration date of the lien. We find no agreement not to file suit, but merely not to enforce the lien which is an entirely different thing. There are many cases in which a plaintiff files suit to avoid the running of prescription or peremption and lets the suit remain until such time as negotiations can be worked out. We do not think that it would have been a violation of Ply-Woods’ obligation or promise in this case to desist from foreclosing by filing a suit but to avoid prescription by not carrying it any further until the expiration of the year had run. We think the district judge considered that the transferring of the account from the individual ledger sheets of the particular jobs to an account styled “note account” had the effect of paying off the individual ledger accounts with the note account. We fail to find any consideration flowing to Ply-Woods for such an agreement. Mr. Aguiar states very definitely and positively that during his conversation with Wilson about the arrangement “it was very definitely understood that we were not to release any liens.” If the liens had been cancelled by the confection of the account note and the debt secured by the liens was paid or novated, then there would be no lien to talk about and no occasion for Mr. Sper-ling or Mr. Aguiar referring to “our liens” when Aguiar testified that he told Wilson on the same day the note was signed that he was not going to release any liens. Wilson did not deny it.
The district judge took the position that the transfer of the accounts on the books of the Ply-Woods company amounted to a novation. The facts in the case, however, do not fulfill the requirements. LSA-C.C. art. 2190, with regard to novation, states:
“Novation can be made only by persons capable of contracting; it is not presumed; the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt.”
From the record it appears that Barousse had paid Wilson in full for all the work done on his behalf. Of course, it works a hardship upon him to have to pay twice, but the plaintiff has availed himself of the provision of the law and Barousse has not. Barousse could have protected himself by requiring a bond or making his checks jointly to the supplier of materials and Wilson.
The defendants alternatively claim that if this agreement does not amount to a novation, then the evidence shows that by imputation of payments, payments made by Wilson to plaintiff should have been imputed to the Aurora Street job and that said credits if so imputed would more than pay the balance on the Barousse job. The mere fact that the Aurora Street account is listed' as the second account on the transferred note account does not indicate that it is entitled to any preference as the oldest account, nor is there any evidence to indicate-that it would be to Wilson’s advantage to apply payments made by him to the- Aurora account.
In view of the above, it is our opinion that. Ply-Woods, Inc., is entitled to- j.udg *778 ment in the sum of $862.51 and to the recognition of its lien.
For the reasons assigned, the judgment in suit No. 67-165 of the docket of the Parish of Jefferson is reversed and that suit is dismissed at plaintiff’s cost.
The judgment in suit No. 67-171, which maintained defendants’ exception of no cause or right of action and dismissed plaintiff’s suit is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Ply-Woods, Inc., and against defendants, Frederick F. Wilson and F. J. Barousse, in solido, in the full sum of $862.51, with legal interest from judicial demand, and with recognition of the lien and privilege on the premises 702 Aurora Street, Metairie, Jefferson Parish, Louisiana, the inscription of which is recorded in records of Jefferson Parish, Mortgage Office Book 372, folio 62, and for all costs.
Reversed.